UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GHOTA TOKHI, DAOUD TOKHI, ROWBINA TOKHI, MAHMOOD TOKHI, MASOOD TOKHI, S.T., and T.T., <br><br> Plaintiffs, <br><br> v. <br><br> KRISTI NOEM, *in her official capacity as Secretary of Homeland Security*, and UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, <br><br> Defendant. | Civil Action No. 24-8952 (RK) <br><br> **OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon Defendants Kristi Noem, in her official capacity as Secretary of Homeland Security, and United States Citizenship and Immigration Services' ("USCIS") (together "the Government" or "Defendants") Motion to Dismiss (ECF Nos. 25, 25-1, "MTD") the Amended Complaint (ECF No. 16-1, "Am. Compl.") filed by Plaintiffs Ghota Tokhi, Daoud Tokhi, Rowbina Tokhi, Mahmood Tokhi, Masoon Tokhi, S.T. and T.T. (together the "Tokhis" or "Plaintiffs"). Plaintiffs opposed the Motion (ECF No. 26, "Opp.") and the Government replied (ECF No. 27, "Rep."). The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Government's Motion is **GRANTED** and the Amended Complaint is **DISMISSED.**

I.  **BACKGROUND**

A. HUMANITARIAN PAROLE

This case centers on one family's application for—and subsequent denial of—humanitarian parole. The Immigration and Nationality Act ("INA") allows the Secretary of Homeland Security, in his or her discretion, to temporarily parole individuals into the United States on a "case-by-case basis for urgent humanitarian reasons." 8 U.S.C. § 1182(d)(5)(A). Parole is not admission; rather it is temporary permission to enter the United States without any permanent immigration status. *See Bamba v. Riley*, 366 F.3d 195, 196 n.2 (3d Cir. 2004) (citing 8 U.S.C. § 1182(d)(5)). Anyone can apply for parole on behalf of a noncitizen outside the United States by filing Form I-131, "Application for Travel Documents, Parole Documents, and Arrival/Departure Records." *See I-131, Application for Travel Documents, Parole Documents, and Arrival/Departure Records*, USCIS, https://www.uscis.gov/i-131 (last updated August 18, 2025).

The USCIS website, uscis.gov, explains the process of applying for parole:[1] *First*, a petitioner (*i.e.*, an applicant) submits an I-131 application on behalf of a noncitizen living outside the United States, called a "beneficiary." *See Humanitarian or Significant Public Benefit Parole for Aliens Outside the United States*, U.S. Citizen & Immigr. Servs., https://www.uscis.gov/humanitarian/humanitarian_parole (last updated Jan. 24, 2025). *Second*, USCIS personnel review the application to confirm their office has jurisdiction over the request, determine whether expedited review is required, and transfer the request as needed. *Id. Third*, if a beneficiary appears eligible for parole based on "urgent humanitarian reasons," USCIS sends a

---

[1] The Court properly considers information that is publicly available on a government website in deciding a motion to dismiss. *See Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017) (taking judicial notice of publicly available information on government websites); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (allowing a court to consider "matters of public record" on a motion to dismiss).

2

"conditional approval notice" or "notice of continued parole processing" to the petitioner and advises on next steps for screening, including a required appointment at a United States embassy. *Id. Fourth*, the beneficiary must fill out an additional form, DS-160, Application for Nonimmigrant Visa, and appear for an appointment at a U.S. embassy. *Id. Fifth*, after the embassy appointment, the consular section will issue travel documents to the United States—but only "[i]f no derogatory (negative) information or new identity information is found during the vetting." *Id.* With travel documents in hand, a beneficiary can then travel to the United States, where he will be inspected at the border and seek authorization of parole for a length of time to be determined at the port of entry. *Id.* The travel documents themselves, even once issued by the consular section, do not guarantee parole; they only authorize travel to a United States port of entry, where a United States Customs and Border Protection official will make a parole decision. *See* 8 C.F.R. § 212.5(f).

### B. Factual Background

For purposes of the present Motion, the Court accepts the well-pled allegations in the Amended Complaint as true. *See In re Cognizant Tech. Sols. Corp. Derivative Litig.*, 101 F.4th 250, 255 & n.4 (3d Cir. 2024) (citing *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011)). Plaintiff Ghota Tokhi ("Ghota") is a United States citizen residing in New Jersey. (Am. Compl. ¶ 2.) On or about September 30, 2021, Ghota filed Form I-131 on behalf of six members of her family (each of whom the Court will subsequently refer to by first name): (i) Daoud Tokhi; (ii) Mahmood Tokhi; (iii) Masood Tokhi; (iv) Rowbina Tokhi; (v) S.T.; and (vi) T.T. (*See id.* ¶ 15.) At the time of the filing of the form, the six beneficiaries were living in Afghanistan, which was also where they had citizenship. (*See id.* ¶¶ 16–17.) Plaintiffs feared persecution by the Taliban because Ghota is a United States citizen and Mahmood's "role as the leader of a 'civil society' organization under the prior [anti-Taliban] government." (*Id.* ¶ 15.)

On November 29, 2022, Ghota received six identical notices from USCIS, each of which explained that her case for parole was "eligible for further processing," but could not be completed while the Tokhis were in Afghanistan because the U.S. embassy in Afghanistan had suspended all operations, including consular services, and could therefore not screen the Tokhis for parole. (*Id.*) Accordingly, the notices explained, the Tokhis had to relocate to a country that had a functioning U.S. embassy and then contact USCIS to continue the parole screening process. (*Id.*)

In January 2023, the Tokhis left their home in Afghanistan and moved to Pakistan, a country with an operational U.S. embassy and consulate. (*Id.* ¶ 17.) They were lawfully admitted into Pakistan for just a few days. (*Id.* ¶ 18.)[2] Since then, the Tokhis have been "unlawfully present" in Pakistan and unable to work. (*Id.* ¶ 23.) Without legal status in Pakistan, the Tokhis cannot make a living, have been arrested (but have avoided imprisonment by paying bribes), and are "afraid to even leave their hotel room." (*Id.* ¶¶ 25–27.)

On June 27, 2023, the Tokhis' applications for parole were denied for unexplained reasons. (*Id.* ¶¶ 28–29; *see also e.g.*, ECF No. 16-2 at 201–02.)[3] On August 18, 2023, the Tokhis filed a lawsuit in this Court, *see Tokhi v. Mayorkas*, No. 23-5215 (D.N.J. 2023), but voluntarily dismissed the case upon being issued "Conditional Approval Notice[s]" on November 7, 2023. (Am. Compl.

---

[2] In August 2023, Daoud applied to the Pakistani government to extend their stay, but the application was refused. (Am. Compl. ¶¶ 21–22.)

[3] Attached to the Amended Complaint is 333 pages of exhibits, including the Tokhis' parole applications and correspondence with USCIS. (*See generally* ECF No. 16-2.) In deciding the present motion, the Court may rely on the exhibits that are "attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer*, 605 F.3d at 230. The Court may also consider any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted). In their Amended Complaint, Plaintiffs repeatedly quote from and reference their various applications and notices, and those documents are therefore integral to the subject complaint. Moreover, Defendants do not contest the authenticity of any documents. *See Mayer*, 605 F.3d at 230.

¶¶ 30–31; *see also* No. 23-5215, ECF Nos. 10, 11.)[4] In relevant part, each Conditional Approval Notice included the following language:

> Parole has been conditionally approved for a period of 2 Years after arrival in the United States, contingent upon successful completion of Consular processing. The parole beneficiary must complete the Department of State (DOS) DS-160, *Application for Non-Immigrant Visa*, online as soon as possible. . . . If USCIS determines that the beneficiary is not eligible for parole such as due to new information found during the overseas processing steps, USCIS may deny the parole application. USCIS will notify the petitioner, beneficiary, and attorney of record of the decision to deny the case in writing. . . . Provided that USCIS discovers no information that would impact eligibility for parole, a travel document will be issued to the parole beneficiary named above.

(Am. Compl. ¶ 32; *see also, e.g.*, ECF No. 16-2 at 314–15.)

Although the Tokhis allege that they "fully complied with all the requirements for parole specified" in the Conditional Approval Notice (Am. Compl. ¶ 33), they each received parole denial notices on December 23, 2024. (*Id.* ¶ 34.) In relevant part, the Parole Denial Notice included the following language:

> On a case-by-case basis, the Secretary of Homeland Security may temporarily parole into the United States an individual for urgent humanitarian reasons or significant public benefit. . . . This parole authority is discretionary and not intended solely to circumvent normal visa-issuing procedures or other remedies available within the law. We carefully reviewed your application in accordance with the law, regulation, and USCIS policy and determined that parole is not warranted. Therefore, we have denied your request for parole. You have failed to establish by a preponderance of the evidence that your request warrants a favorable exercise of discretion to parole the beneficiary into the United States. After review of all the information concerning your application, including supporting documentation, background checks, country conditions, and all other relevant evidence available to us, negative factors outweigh positive factors in your case and therefore your parole request has been denied as a matter of discretion.

---

[4] Neither the Amended Complaint nor any of the briefs explain how or why the Tokhis were issued parole denials in June and then issued conditional approvals in November, just over four months later. Plaintiffs do not contest the issuance of the conditional approvals.

(*See, e.g.*, ECF No. 16-2 at 213.) Plaintiffs assert that they do not know what "negative factors" precipitated the denial of their parole, and allege that they "have no reason to believe such [negative] factors occur a) because if it did [Plaintiffs] should be aware of it[,] b) the Defendants have never informed them of any such negative factor[,] and c) because if any such negative factor existed the USCIS should not have granted [Plaintiffs] Conditional Approval Notices of their parole." (*Id.* ¶¶ 35–38.)

Despite their incredulity at the parole denial, Plaintiffs posit (and summarily dismiss) one possible "negative factor": on November 20, 2024—just one month before their parole applications were denied—Daoud received a "notice of intent to deny" informing him that "USCIS was made aware that U.S. Government records showed [he] had encountered Coalition Forces in 2010 and that [he was] apprehended and detained by Coalition Forces in 2010." (*See id.* ¶ 39; ECF No. 16-2 at 225–26.) Doud responded to the notice with an unsworn declaration, explaining that the Coalition Forces "released [him], [and] they apologized and said there was a misunderstanding and then they said that they are ready to help [him] with whatever damage there was to [his] house and then gave [him] about 2000 Afghanis." (ECF No. 16-2 at 227; *see also* Am. Compl. ¶ 40.) Because the Coalition Forces purportedly admitted they made a mistake and apologized, Plaintiffs contend that "this could not possibly be a negative factor." (Am. Compl. ¶ 40.)

Plaintiffs ostensibly remain in Pakistan, having exhausted their $19,000 in savings. (*Id.* ¶¶ 44–45.) Seeking redress for what they claim is an improper denial of their parole applications, Plaintiffs bring three causes of action: (1) Breach of Contract; (2) Promissory Estoppel; and (3) Writ of Mandamus.

## C. Procedural Background

Plaintiffs filed the present action on September 4, 2024. (ECF No. 1.) The Court granted the parties' joint motion to stay the case on December 30, 2024, and directed the parties to provide a joint status report by March 20. (ECF No. 5.) In early March 2025, Plaintiffs attempted to voluntarily dismiss this matter twice, though the filings were rejected by the Clerk's office for failure to follow ECF guidelines. (*See* ECF Nos. 6, 7.)[5] On March 20, the parties submitted a joint status report. (ECF No. 8.) Plaintiffs reported that although they "initially intended to dismiss this case," they decided to instead prepare an amended complaint "in light of the recent announcement [of] an extensive 'travel ban' on citizens of Afghanistan." (*Id.* at 2.) Defendant asserted that Plaintiff's case was moot because their application had been denied. (*Id.*) The Court granted Plaintiffs' request to file an amended complaint. (ECF No. 9.)

Rather than file an amended complaint through a standalone filing on the docket, however, Plaintiffs, on April 8, 2025, filed an Application for an Order to Show Cause, apparently under Local Rule 65.1, as to why a Preliminary Injunction should not issue. (ECF No. 16.) Appended to the Application was an Amended Complaint. (ECF No. 16-1.) Defendant expressed an intent to file a motion to dismiss the Amended Complaint. (*See* ECF No. 20.) At a teleconference on April 22, 2025, the Court denied Plaintiff's Application and directed the parties to brief the motion to

---

[5] Defendants argue that Plaintiffs' various Motions to Dismiss—which were terminated by the Clerk's Office for being improperly filed (*see* ECF Nos. 6, 7)—were self-executing pursuant to Fed. R. Civ. P. 41, and therefore had the effect of ending the case without any Court action. (*See* MTD at 9–10 (citing *In re Bath & Kitchen Fixtures Antitrust Litig.*, 535 F.3d 161, 165 (3d Cir. 2008)).) Defendants did not raise this issue in their joint status report, filed on March 20, 2025 (*see* ECF No. 8), their response to Plaintiffs' application for a preliminary injunction (*see* ECF No. 21), or their pre-motion letter (*see* ECF no. 20). Indeed, the Court notes that all parties acted in accordance with the assumption that the case was ongoing, in reliance on the Clerk's quality control messages. The Court declines to dismiss this case based on Plaintiffs' prior Rule 41 submissions.

dismiss. Defendant filed a Motion to Dismiss (ECF No. 25), Plaintiffs opposed (ECF No. 26), and Defendant replied (ECF No. 27). The Motion is now ripe for decision.

## II. LEGAL STANDARD

### A. SUBJECT MATTER JURISDICTION

Federal Rule of Civil Procedure ("Rule") 12(b)(1) authorizes a defendant to move to dismiss a complaint for lack of subject matter jurisdiction. As an initial matter, a court must first ascertain whether a Rule 12(b)(1) motion "presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 320 (3d Cir. 2018) (citation omitted). "A facial 12(b)(1) challenge, which attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to consider the allegations of the complaint as true." *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (internal quotation marks and citation omitted). A factual challenge, on the other hand, "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Id.* In a factual challenge, the "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

Where, as here, Defendants bring a facial attack of the Court's subject matter jurisdiction, the Court reviews the well-pleaded facts in the complaint in the light most favorable to Plaintiffs. *Manivannan v. United States Dep't of Energy*, 42 F.4th 163, 169 (3d Cir. 2022). Because federal courts are courts of limited jurisdiction, "[i]t is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction."

*G. W. v. Ringwood Bd. of Educ.*, 28 F.4th 465, 468 (3d Cir. 2022) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Thus, Plaintiffs must show that this Court has subject matter jurisdiction to survive the Rule 12(b)(1) Motion. *Potter v. Cozen & O'Connor*, 46 F.4th 148, 155 (3d Cir. 2022) (citation omitted).

### B. FAILURE TO STATE A CLAIM

For a complaint to survive dismissal under Rule 12(b)(6), it must contain "sufficient factual matter" to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023). The court accepts all allegations in the complaint as true and gives the plaintiff "the benefit of every favorable inference to be drawn therefrom." *Kulwicki*, 969 F.2d at 1462. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In deciding a Rule 12(b)(6) motion, the court can only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer*, 605 F.3d at 230. A court may also consider any document "integral to or explicitly relied upon in the complaint" when ruling on a motion to dismiss. *In re Burlington Coat Factory*, 114 F.3d at 1426.

## III. DISCUSSION

Endeavoring to gain entry to the United States, Plaintiffs assert the following novel legal theory[6]: Defendants, by denying the Tokhi's parole applications, breached a contract embedded in the conditional approval notices. (*See* Am. Compl. ¶¶ 52–77.) Despite Plaintiffs' sympathetic predicament, the Court lacks subject matter jurisdiction to reach the merits of this case. Congress, in enacting the INA, has shielded many immigration decisions—including determinations of eligibility for humanitarian parole—from judicial review. Plaintiffs' creative repackaging of its contentions as seeking enforcement of a contract rather than review of an executive immigration decision amounts to a distinction without a difference. Moreover, even if this Court *did* have jurisdiction of Plaintiffs' claims, the explicit conditional language in the notices makes clear that the Government neither entered into nor breached any contract with any Plaintiff.

### A. SUBJECT MATTER JURISDICTION

Defendants argue that this Court lacks subject matter jurisdiction over this matter because the INA precludes review of certain discretionary decisions made by the Secretary of Homeland Security, including decisions to deny parole. (*See* MTD at 11.) Plaintiffs do not argue that judicial review is unavailable in the parole context, rather they maintain that their claim is for enforcement of a contract, not judicial review. (Opp. at 6.) According to Plaintiffs, arguments about the availability of jurisdiction under the INA are "beside the point." (*Id.*) The Court disagrees.

Broadly speaking, "[d]istrict courts have jurisdiction to review agency action under 28 U.S.C. § 1331, 'subject only to preclusion-of-review statutes created or retained by Congress.'"

---

[6] Indeed, at a teleconference with the Court on April 22, 2025, counsel for Plaintiffs categorized the present matter as a "case of first impression" and indicated that he would not be able to point to any court that has held that a Notice of Conditional Approval is a binding contract. (*See* Transcript of Apr. 22, 2025 Teleconference at 6:11–14.)

10

*Bakran v. Sec'y, U.S. Dep't of Homeland Sec.*, 894 F.3d 557, 562 (3d Cir. 2018) (quoting *Chehazeh v. Att'y Gen.*, 666 F.3d 118, 126 (3d Cir. 2012)). The INA includes one such "preclusion-of-review" provision. *See* 8 U.S.C. § 1252(a)(2)(B)(ii). Specifically, Section 1252 provides: "Notwithstanding any other provision of law (statutory or nonstatutory) . . . no court shall have jurisdiction to review . . . any [] decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." *Id.*

Review of decisions made pursuant to the parole statute, 8 U.S.C. § 1182(d)(5)(A), is plainly precluded by Section 1252. *First*, the parole statute is part of the "subchapter" referenced in § 1252(a)(2)(B)(ii). The subchapter at issue includes Sections 1151 through 1382 of Title 8 of the United States Code, which contains Section 1182. *Second*, the parole statute is discretionary by its terms because it specifies that "[t]he Secretary of Homeland Security may . . . *in his discretion* parole into the United States temporarily under such conditions as he may prescribe . . . ." 8 U.S.C. § 1182(d)(5)(A); *see Geda v. Dir. of USCIS*, 126 F.4th 835, 842 (3d Cir. 2025) ("[T]his jurisdictional bar applies not to all decisions the Secretary is entitled to make, but to a narrower category of decisions or actions where Congress has taken the additional step to specify that the sole authority for the action is in the Secretary's discretion." (cleaned up)); *Soltane v. U.S. Dep't of Just.*, 381 F.3d 143, 146 (3d Cir. 2004) ("The key to § [1252](a)(2)(B)(ii) lies in its requirement that the discretion giving rise to the jurisdictional bar must be 'specified' by statute."); *Khan v. Att'y Gen.*, 448 F.3d 226, 232 (3d Cir. 2006) (same). Accordingly, this Court is precluded from reviewing a parole decision by the Secretary of Homeland Security—including the decision to deny the Tokhis' parole applications.

Courts in this District routinely find that they lack jurisdiction to review discretionary parole decisions. *See, e.g., Clifton M. v. Decker*, No. 18-15760, 2019 WL 13298586, at *4 (D.N.J. Mar. 19, 2019) ("The statutory section authorizing parole for urgent humanitarian reasons . . . is precisely the kind of discretionary decision that § 1252(a)(2)(B) precludes this Court from reviewing." (citations omitted)); *Lorenzo v. Taylor*, No. 17-11640, 2018 WL 1092455, at *1 (D.N.J. Feb. 28, 2018) ("[C]ourts in this district and other circuit courts hold that the decision to parole for immigration detainees is within the sole discretion of the Attorney General, and federal district courts do not have jurisdiction under federal law to review such decisions."); *Codina v. Chertoff*, No. 06-105, 2006 WL 2177673, at *2 (D.N.J. July 31, 2006) ("Petitioner's parole request under 8 U.S.C. § 1182(d)(5)(A) was denied. The Court cannot review this denial of discretionary relief . . . as the statute expressly grants the Attorney General discretion to grant or deny parole."). The Court has no basis to diverge from these decisions.

Plaintiffs' argument—that they seek enforcement of a contract rather than judicial review of a discretionary parole decision—is unpersuasive. The thrust of Plaintiffs' contractual argument is that the Conditional Approval Notices that Plaintiffs received on November 7, 2023 contained the following binding contractual language: "Provided that USCIS discovers no information that would impact eligibility for parole, a travel document *will* be issued for the parole beneficiary named above." (*See* Am. Compl. ¶ 32 (emphasis in original)). The "will" language, according to Plaintiffs, "imposes a mandatory duty upon the Defendants." (*Id.* ¶ 55 (citing *James v. Quinlan*, 866 F.2d 627, 629 (3d Cir. 1989)[7]).) Plaintiffs explain that "USCIS said it 'will' give the plaintiffs

---

[7] The case relied on by Plaintiffs is about whether prisoners have a liberty interest in job assignments, wherein the court relied in part on whether any statute included language "of a mandatory character" such as "'shall,' 'will' or 'must'" to restrict the decision-making authority of prison officials. *See James*, 866 F.3d at 629. Unquestionably, the statute at issue here includes no such mandatory language, and uses discretionary language instead. *See* 8 U.S.C. § 1182(d)(5)(A). Plaintiffs' reliance on this case to support the

12

conditional parole, and, by implication, parole itself, unless it 'determines that the beneficiary is not eligible for parole." (Opp. at 11.) Plaintiffs acknowledge that they may be deemed ineligible based on "new information found during the overseas processing steps," but posit that this is an "objective standard" that Defendants have failed to satisfy. (*Id.*)

Here, Plaintiffs' contract theory is predicated on the notion that Defendants did not find any "new information" to deny the parole applications. (*See* Am. Compl. ¶ 59 (alleging that "[n]o new (or any) derogatory information has been found regarding the TOKHIS, and they remain as eligible for parole as they were on the date of the Notice").) To assess this premise, however, the Court would need to determine *why* parole was denied and *whether* any adverse information had been uncovered. Indeed, Plaintiffs' own pleading probes the Secretary's rationale by first alleging that Doud received notice of the intent to deny his parole application and then explaining why Doud's record of being apprehended and detained by Coalition Forces could not possibly have been proper grounds for denial. (*See* Am. Compl. ¶¶ 39–40.) The Court does not know—and will not speculate as to—why Plaintiffs' parole applications were denied. To attempt to answer that question in this judicial forum would contravene Congress' intent to preclude judicial probing and review of the Secretary's discretionary decision. *See* 8 U.S.C. § 1252(a)(2)(B)(ii).

Plaintiffs cite to a 2014 case from the Court of Federal Claims in an attempt to distinguish what it asks the Court to do (*i.e.*, enforce a contract) from that which is statutorily prohibited (*i.e.*, judicial review). (Opp. at 6.) That case, after examining statutes, case law, and a legal dictionary, determined that "judicial review" unambiguously "contemplates that a court will review a decision issued by another tribunal." *Cardiosom, LLC v. United States*, 115 Fed. Cl. 761, 774–75 (2014).

---

mandatory nature of the word "will" in a government agency notice that is otherwise replete with conditional language, is inapposite.

13

However, Plaintiffs have failed to distinguish the present case from *Cardiosom*, aside from stating that *Cardiosom* involved an APA claim, and this case does not. (*See* Opp. at 6.) There is no logical way to enforce the purported contract—assuming *arguendo* one exists—without conducting a judicial review of the Secretary's underlying denial reasoning, and Plaintiffs have cited no authority allowing this Court to do so.

Accordingly, the Court lacks subject matter jurisdiction over this matter and is compelled to dismiss. Generally, a court's finding a lack of subject matter jurisdiction ends the inquiry. *See In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 155 (3d Cir. 1997). Here, however, in light of the novel issue before the Court and the very difficult current personal predicament of the Plaintiffs, the Court will proceed to address the merits. *See, e.g., Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 415–16 (assuming the existence of statutory jurisdiction and proceeding to the merits); *Schober v. Schober*, 761 F. App'x 127, 130 (3d Cir. 2019) (affirming decision of magistrate judge who held that she lacked jurisdiction and, in the alternative, would dismiss on other grounds); *United States v. Washington*, No. 20-2333, 2023 WL 2945902, at *4 (3d Cir. Apr. 14, 2023) ("In sum, we lack jurisdiction to hear Washington's remaining habeas claims, *but even if we had jurisdiction*, those claims would fail on their merits." (emphasis added)).

### B. BREACH OF CONTRACT

Even if this Court *did* have subject matter jurisdiction over this matter, the Court cannot embrace Plaintiffs' novel contract theory because the Conditional Approval Notice that the Tokhis received was not a contract, and there is no basis to compel the Government to grant Plaintiffs'

parole application based on the language of the Notice.[8] In New Jersey,[9] the "basic features" of a contract are "offer, acceptance, consideration, and performance by both parties." *Shelton v. Restaurant.com, Inc.*, 70 A.3d 544, 556 (N.J. 2013). "A contract arises from offer and acceptance, and must be sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty." *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992) (cleaned up). Accordingly, to prevail on a breach of contract claim, a plaintiff must prove four elements: "first, that the parties entered into a contract containing certain terms; second, that plaintiffs did what the contract required them to do; third, that defendants did not do what the contract required them to do, defined as a 'breach of the contract'; and fourth, that defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs." *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (cleaned up).

The Court has serious misgivings that Plaintiffs can establish any of the requisite elements of contract formation and breach. Without question, Plaintiff's breach of contract claim fails at the third element, because there is no indication from the Amended Complaint that Defendants "did not do what the contract required them to do." *See id.* The Conditional Approval Notice is, by its

---

[8] Defendants also argue that sovereign immunity "shields the Federal Government and its agencies from suit" for equitable relief in a breach of contract case. (MTD at 15 (quoting *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999).) However, the Third Circuit has held that the APA waives sovereign immunity of "all nonmonetary claims against federal agencies and their officers, regardless of whether or not the cases seek review" under the APA itself. *Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 397 (3d Cir. 2012). Defendants concede that this 2012 case "does hold that sovereign immunity is waived for equitable actions not brought under the APA," and asks this Court to construe ambiguity here in favor of immunity. (Rep. at 6.) Defendants have not pointed to any ambiguity in the APA's statutory text or in the caselaw. Accordingly, the Court does not dismiss the breach of contract claim on sovereign immunity grounds.

[9] The parties do not contest that New Jersey contract law applies. (*See, e.g.*, Am. Compl. ¶¶ 48–49; MTD at 19; Opp. at 10.)

title and terms throughout the document, *conditional*—its approval depends on the satisfaction of a variety of conditions.[10]

The Notice contains the following language that provides a basis to deny parole *even if* all beneficiaries "did what the contract required them to do," *see Goldfarb*, 245 A.3d at 577: "**If** the USCIS determines that the beneficiary is not eligible for parole such as due to new information found during the overseas processing steps, USCIS **may deny the parole application**. USCIS will notify the petitioner, beneficiary, and attorney of record of the decision to deny the case in writing." (Am. Compl. ¶ 32 (emphasis added); *see also, e.g.*, ECF No. 16-2 at 314.) Here, the Notice allows the Government to both deny parole approval and still comply with the terms it sets, so long as it finds that the beneficiary is not eligible for parole. This is precisely what happened in the case of the Tokhis; Defendants determined that the Tokhis were not eligible for parole as part of the overseas processing steps. (Am. Compl. ¶ 34.) Accordingly, Defendants determined that Plaintiffs did not satisfy the conditions precedent for parole.

Plaintiffs further assert that the denial notice "did not identify any negative factors." (*Id.* ¶ 35.) However, even assuming the terms of the Conditional Approval Notice act as a binding contract upon Defendants, those terms do not require Defendants to identify the negative factors. The terms only require Defendants to "notify" the parties "of the decision to deny the case in writing" (*id.* ¶ 32), which is what occurred here. (*Id.* ¶ 34; *see also, e.g.*, ECF No. 16-2 at 213.)

---

[10] One of the conditions embedded in the Notice was to "complete the Department of State (DOS) DS-160" form "as soon as possible." (*See* Am. Compl. ¶ 32; *see also, e.g.*, ECF No. 16-2 at 314.) Plaintiffs neither allege that they completed this form, nor include a copy of this form in their voluminous exhibit. *See Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*, 247 F. App'x 403, 405 (3d Cir. 2007) ("A complaint that alleges a breach of contract without averring compliance with conditions precedent does not state a valid breach of contract claim.") Instead, they conclusorily state that they "fully complied with all the requirements for parole specified" in the Notice. (Am. Compl. ¶ 33.) Buried on page 247 of Plaintiffs' exhibit, is a declaration that the Tokhis completed the DS-160 form "online as soon as [they] could." (ECF No. 16-2, at 247 (Decl. of Mahmood Tokhi).)

16

Plaintiffs focus on the word "will" used throughout the Conditional Approval Notice (*see, e.g.*, Am. Compl. ¶¶ 54–55; Opp. at 11) but ignore and/or minimize the many conditions stated directly in the same document. Indeed, "no one could reasonably have thought" that the word "will" alone "was intended to create legally binding obligations." *See Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 308 (3d Cir. 2004) (citing *Geldreich v. Am Cyanamid Co.*, 691 A.2d 423, 427 (N.J. 1997)); (*see also* MTD at 20–21; Rep. at 10.)

Notwithstanding the unambiguous discretion embedded in the Conditional Approval Notices and under the INA, Plaintiffs suggest analogizing to a separate well-known government agreement that is both discretionary and enforceable: criminal plea agreements. (Opp. at 12). Plaintiffs argue that adopting the Defendants' reasoning as to the Conditional Approval Notices "would lead to the conclusion that all plea agreements are unenforceable because they create a binding contract that could never be modified at the discretion of the prosecutor." (*Id.*). Plea agreements, however, are easily distinguishable: unlike parole applications, which are statutorily committed to the discretion of the Secretary of Homeland Security, *see* 8 U.S.C. § 1182(d)(5)(A), prosecutors do not have unfettered discretion to enter into plea agreements; such agreements are subject to judicial approval. *See, e.g., United States v. Gonzalez*, 918 F.2d 1129, 1133 (3d Cir. 1990) ("It is axiomatic that a plea agreement is neither binding nor enforceable until it is accepted in open court."). Contrary to Plaintiffs' assertion, the Court's determination here that Defendants did not breach a contract in denying Plaintiffs' parole applications does not in any way call into question the validity of plea agreements.

Plaintiffs have not cited to a single case from any court in the country holding that Conditional Approval Notices are contracts, or that the Government breaches a contract by denying parole applications. The Court finds no basis to endorse this novel legal theory today.

## C. PROMISSORY ESTOPPEL

Plaintiffs' promissory estoppel claims are equally unavailing. Under New Jersey law, "[p]romissory estoppel is made up of four elements: (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Goldfarb*, 245 A.3d at 577 (quoting *Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington*, 944 A.2d 1, 19 (N.J. 2008)).

Although Plaintiffs' promissory estoppel claim fails on a variety of grounds,[11] Plaintiffs have notably failed to allege any reliance on Defendants' purported promises. Plaintiffs allege that they detrimentally relied on Defendants' promise to grant parole when they traveled from Afghanistan to Pakistan for the sole purpose of completing the required steps for parole. (*See* Am. Compl. ¶¶ 67–71.) Plaintiffs' own allegations illustrate, however, that they did not relocate to Pakistan in reliance on any promise contained in the Conditional Approval Notice, because they had not even received that notice yet when they moved to Pakistan. Indeed, Plaintiffs allege that on November 29, 2022, Ghota received six identical Notices of Continued Parole Processing. (*Id.* ¶ 16.) These Notices explained that "the beneficiary must arrange travel to a country where there is a U.S. embassy or consulate to continue processing of the parole request." (*Id.*) Thereafter, "shortly prior to January 6, 2023," the Tokhis arrived in Pakistan. (*Id.* ¶ 17.) Nearly ten months *later*, on November 7, 2023, the Tokhis received Conditional Approval Notices. (*Id.* ¶ 31.) Accordingly, it is impossible for Plaintiffs reasonably relied on the Conditional Approval Notices,

---

[11] Unlike breach of contract, Plaintiffs' promissory estoppel claim may indeed also be barred by sovereign immunity, because Congress' waiver of sovereign immunity in the breach of contract context "does not extend to claims for promissory estoppel." *Talley v. Penn. Dep't of Corr.*, No. 19-1589, 2024 WL 1253626, at *21 (E.D. Pa. Mar. 21, 2024) (citing *Steinberg v. United States*, 90 Fed Cl. 435, 443 (2009); *Hercules Inc. v. United States*, 516 U.S. 417, 423 (1996); *Jablon v. United States*, 657 F.2d 1064, 1070 (9th Cir. 1981)).

which postdate their relocation, and Plaintiffs have not alleged any additional facts evidencing reliance.

### D. WRIT OF MANDAMUS

Plaintiffs' third and final claim is brought pursuant to the Mandamus Act. (*Id.* ¶¶ 78–81.) This Act empowers courts to issue writs of mandamus "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. A writ of "mandamus is a drastic one, to be invoked only in extraordinary situations." *Semper v. Gomez*, 747 F.3d 229, 251 (3d. Cir. 2014) (internal quotation marks and citation omitted); *see also Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (describing a writ of mandamus as "one of the most potent weapons in the judicial arsenal" (internal quotation marks and citation omitted)). To qualify for mandamus, the party seeking the writ must meet three elements: "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Temple Univ. Hosp., Inc. v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 2 F.4th 121, 132 (3d Cir. 2021). A court can, in its discretion, decline to issue a writ. *Cheney*, 542 U.S. at 381.

As set forth above, Plaintiffs have failed to allege that any government agency or official had a "clear duty to act." *See Temple Univ. Hosp., Inc.*, 2 F.4th at 132. Instead, the decision to deny Plaintiffs' parole application is entirely discretionary, and provides no such duty. *See* 8 U.S.C. § 1182(d)(5)(A); *see also Heckler v. Ringer*, 466 U.S. 602, 616 (1984) (finding that the writ of mandamus only provides a remedy if defendant owes a "clear *nondiscretionary* duty" (emphasis added)). Plaintiffs mount no real objection to this argument. (*See* Opp. at 13.) In any event, even if there were any merit to Plaintiffs' mandamus claim, the Court declines to find a writ is warranted. *See Cheney*, 542 U.S. at 381.

## CONCLUSIONS

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 25) is **GRANTED** and Plaintiffs' Amended Complaint (ECF No. 16-1) is **DISMISSED**. An appropriate Order accompanies this Opinion.

_____
ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: September 3, 2025